Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Susan F. Hutchinson and Justice Liam C. Brennan. The case is No. 2180256, People of the State of Illinois, Plaintiff-Appellee v. Angel Arrendondo, Defendant-Appellant. Arguing for the Appellant, Amaris Danek. Arguing for the Appellee, Diane Campbell. Good morning. Good morning. Are both parties ready to proceed? Yes, Your Honor. All right. Ms. Danek, you may proceed. Thank you. In this case, when Judge Tegeler sentenced Mr. Arrendondo to the mandatory minimum of 10 years in prison after his bench trial, he said, quote, quite frankly, I think this is one time that the justice system is not doing its job properly, end quote. And this is a case where the system broke down. Where it broke down, the turning point of this case was at the plea bargaining, specifically the legal advice that Mr. Arrendondo was given by his own attorney when he had to make a decision of whether or not to take the state plea. And today, we are in front of this court asking that that wrong be righted. State's offer in this case was to drop the armed violence charges that Mr. Arrendondo was facing in exchange for four years in prison. That plea offer was on the table from May of 2016 until August. The alternative was that if he was convicted, the armed violence charges would result in a mandatory minimum of 10 years in prison. It was a six-year difference. And his attorney advised him not to take the plea. That was his testimony at the post-trial hearing. He told Mr. Arrendondo that he had, quote, a very good case, a strong case. I looked over the reports, looked over the case law, and I believed the state couldn't meet their burden. I thought he would win the case in terms of what the case law was, end quote. Those were the words of his attorney, the person that he hired to advise him on the state of the law in Illinois. The state couldn't meet their burden. And yet, there's nothing in the case law to support this conjecture. In this case, the police encountered Mr. Arrendondo lying in his bed. There was a loaded shotgun two or three feet from the bed leaning up against the wall. The armed violence statute does not require that someone have a weapon physically on their person or actually using that weapon in order to be convicted of armed violence. A person can be considered otherwise armed if they have access to and control over a weapon. There is a difference between making a wrong judgment call in a case and not knowing the law. And nothing in the case law even arguably supports the advice that his attorney gave him during that plea bargaining process, that the state couldn't meet their burden. Neither the fact that he was lying down or asleep, nor the fact that the gun was two to three feet from him have support in the law that he would be considered not armed. It's really clear in the state of Illinois that the question is not whether someone reached for the gun, tried to get the gun, attempted to use the gun. The question is whether someone had immediate access to or timely control over the weapon. The case law explains the purpose of the statute so that someone doesn't have the opportunity to make a spontaneous, split second, instantaneous decision to use a weapon that's right on hand and potentially kill someone without the time to reflect on that decision. Having a gun within your control and access. And this overlaps with one of the most fundamental rights we have, the right to effective assistance of counsel in a criminal case. This extends to the right to effective assistance during plea negotiations. Plea bargains are essential, they're ubiquitous, so many cases in our system are resolved through plea bargain. And the Sixth Amendment requires effective assistance at this stage just as at any other critical stage. And so when the vast majority of these cases are being resolved through plea, that's the decision that the defendant has to make, that's the decision that you hire an attorney to be able to advise you on the law and on the facts of your case. Courts have found defendants to be armed in cases that are much closer than this case was. For example, including when the defendant was asleep. Being asleep is not a defense to an armed violence charge. In one case, the defendant was asleep with a gun underneath the bed. In one case, the defendant was a few feet from a gun, which was underneath a love seat and a coffee table was in the way. Another case, the defendant was sitting on a couch with a gun under the cushion and he was only sitting there because the police ordered him to sit there. Another case, the defendant was kneeling within a foot or two of a bed, child was on the bed, the gun was underneath, he wasn't reaching for the gun, he would have had to lift the bed with the child on it in order to access the gun. These small impediments are not a defense to armed violence. And in all of those cases, the court found that the defendant was armed. And in this case, Mr. Arredondo was lying on the bed, possibly asleep, with a loaded gun two or three feet from the bed. Nothing in the case law suggests either his lying on the bed, whether asleep or not, or the position of the gun would lead to an acquittal, yet his attorney said to him, I looked over the report, looked over the case law, and I believe the state couldn't meet their burden. I thought he would win in terms of what the case law was. And he maintained that position all the way through, not just the plea bargaining and the trial, but up to the post-trial proceedings. He remained, as the state pointed out in their response, adamant that he believed his client was innocent of these charges. When he was arrested, Mr. Arredondo was 19 years old. He had an attorney, he had someone on his side advising him, helping him, saying essentially, we've got this part of it, meaning the armed violence. That was really the only, that was the only charge that was contested at trial. There's a difference between having no legal argument at all and having a possible legal argument. In the same sense, there's a difference between having a possible legal argument and having a good legal argument. His attorney testified, he advised him he had a very good case, a strong case, based on what? And so, even in the realm of law, where we come in front of the court every day, reasonable minds can differ, reasonable minds do differ. This advice that he gave to his client was so far beyond the pale and beyond any objective measurable standard of reasonableness, it constituted deficient performance and ineffective assistance. Ms. Vanna, come on, it's time for questions. Am I at the end? No, but wrap up. Sure. Sure. To give this advice to your 19-year-old client who has not been involved in the criminal justice system, who is vulnerable, relying on your advice to make an informed decision, that is not a knowing, involuntary rejection of the plea. And for the plea decision to be knowing and voluntary, defense counsel must fully inform himself of the facts and the law. For this reason, his decision to reject that plea was not made knowingly or voluntarily. And we're asking that this court vacate his conviction and remand the case for the state to offer in the trial court to accept the original plea offer of four years. In this case, based on the advice his attorney gave him, the system broke down. And I welcome any questions the panel may have. Thank you, Ms. Vanna. Justice Brennan, your questions. Was discovery complete at the time that the state withdrew the offer? No. No, it was not. Any relevance to that in terms of your analysis? No. And the reason for that is the point in time when his attorney needed to have been giving him advice was the point in time when the plea bargain was actually on the table, the time that the plea bargain was open. And so even if defense counsel didn't have all the information, that advice looks completely different than, I think you've got a good case, I think you've got a strong case. That advice is, I don't have all the information. I can't tell you one way or another. We can try to go to the state and say, look, please keep this open until we've got all the discovery. But that wasn't his advice to him, and that in itself is ineffective assistance. Because not to come back to the state and say, look, we can't give you a decision because I can't give advice to my client, there's no information here. No, he said to him, I think he had a good, strong case, and he maintained that all the way through that final hearing after the trial. And so for that reason, there really was no difference that the plea didn't remain on the table all the way up to the point of trial. It was the point when the plea was open that he had a right to that effective assistance based on the law. Let's say that we agree with you that the advice was deficient, and we reverse and remand. How do you compel the state to reconvey the offer? Because otherwise, the minimum is what the defendant received. Correct, and my understanding is that that is, if you were to recommend that, that that would be something that the state would be able to consider and would be able to offer to the defendant on remand. What if they don't? Other than having a new trial, aren't we right back to where we were? Yes, I understand that that could be a risk, but what we're asking this court to do is to make its decision based on the facts before it, whether or not it has absolute control over what the state might do in this case. Fair enough. Thank you. No other questions. Justice Hutchinson. Thank you, Justice Burkett. Ms. Stanek, your last statement, or your last, that we write, if we agree with you, we write the decision in such a way that the state, and I didn't understand exactly what you meant. Could you restate that? Sure. I think that if this court were to recommend a restatement of that plea bargain, I think that would be compelling to the state. In addition to the really strong language that Justice Pegler used in his ultimate ruling on this, I think that when he says that he thought that Mr. Arredondo not only wouldn't be served by the 10 years in prison, he would have even recommended probation if that had been a possibility. And so I think that that language coming at the end, in addition, if this court were to reverse this case, I think that would be extremely compelling. And of course, the state has the ability to make that decision, but given the context of all of this, I really do think that that would be the appropriate remedy in this case. Okay. Do you have any specific authority that would allow us to recommend something of this nature, even with the statements that Judge Pegler made? I don't, but I could certainly try to supplement. I would be more than happy to look into that. I do apologize. I don't have that offhand. Assuming this case goes back, or if the case goes back, it probably would go back into the same division, if another judge was assigned, does he or she have any responsibility to look at Judge Pegler's comments or thoughts about this case? I certainly, you know, certainly if this were to go to another judge, another judge would be able to look at the facts in this case, they would be able to review what had occurred at the original trial, what the testimony was in the post-trial motion, and I would certainly hope that they would look at that and consider that. And they would have the benefit of that transcript in order to, you know, inform themselves of the previous hearing. How long before the actual trial was the plea offer withdrawn? Sure. So, the plea on the seat originally, the seat originally offered the plea in May of 2016, and it remained on the table until August of 2016. I can't find the exact… Alright, but when did the trial occur? Sure, sure. So, August 11th, the defendant said no agreement on the plea, and trial began on, let me see the date, it was almost a year later, August of 2017, August 7th of 2017, so it was a year prior. Alright, now, during… does this file or does this record contain any sort of memo to the file that defense counsel wrote explaining where he indicates, this is what I said to my client, this is how I made that decision? No, it was his testimony in the post-trial hearing where he said, this is the advice I gave to my client, and this is what I, this is essentially what I told him. So, it was his testimony at the post-trial hearing. I'm not aware that there was a written memo of what it was that he had advised his client. Is there anything in this record where defense counsel sends a letter to the state indicating, this is what we're basing this upon, this rejection, or this is how I see the case? Which would not necessarily be unusual nor controlling, but I'm just asking if it exists. Sure, I'm not aware of that either. What I do have is on page 21 of the record, defense counsel had said, there is no agreement on the plea, we're asking for a date before the trial, and then the state responded that the offer was withdrawn, it was far below the minimum, you know, saying, okay, the defense didn't want it, it's withdrawn. Okay. And finally, during the hearing, which is where most of this took place, or most of the conversation about this took place, is counsel citing, is he actually citing cases that says, this is what I based my opinion on, or is he just, again, saying, looking at the records that I had available, I thought it was a strong case? Yeah, let me take a look at his closing argument. He did, yes, in the defense's closing argument, he made reference to, let me, I want to make sure I get this correct. Actually, in the defense's closing argument, he asked the court just to adopt his argument for directed finding. And so then in the directed finding, I do believe he went through some case law. All right, thank you very much, Ms. Danek. Justice Burkett, I have no other questions. Justice, if it's possible, I did want to just bring up one other thing. You had asked about the potential remedy. And so I did cite to a U.S. Supreme Court in my opening brief, Loeffler versus Cooper. And the Supreme Court did hold in that case that the remedy was to order the state to reoffer the plea agreement. So I just did want to bring that to your attention, that there is some precedent for that. Ms. Danek, I'm aware of that. The obligation now is for you to show deficient performance. And I think your argument is that the case law is very, very clear, that if a firearm or any weapon is in the immediate access or under the time of control of the defendant who's in commission of a felony, that's armed violence, whether or not they reach for the gun. And Condon in the leading case, people versus hair, another Illinois Supreme Court case after that, stands for that principle, that's your argument, correct? Correct. So there's literally no wiggle room. And when the defendant was told by his lawyer, quote, unquote, you're innocent. The defendant relied upon that in rejecting a very liberal or lenient offer, right? Yes. That's all I have. Thank you. Ms. Campbell. Good morning, Your Honors Counsel. I'm going to address three areas. The status of the case when the plea was rejected and then withdrawn, the evolution of the law, and the mere presence of guns and drugs alone in the house is not sufficient. And then the facts that support the mere presence theory. For the status of the case, the case law says that when you consider an ineffective assistance claim in accepting or rejecting a plea, you consider three things, whether the defendant would accept the offer, whether the state would have withdrawn, and whether the trial court would accept it. Here, it's mostly the first two factors. And the biggest problem is the state did, in fact, withdraw the offer. It was open for only about three months early in the case. This was not a case of an eve of trial plea. This is covered in my brief on page 20. The offer I have as rejected on May 16, 2016. The state then announced that it was withdrawn and there would be no more offers. As Justice Brennan questioned, this was well before discovery was completed. There was a pending motion to suppress statements. And defense counsel states in the brief that on page 14 that the underlying felonies were proven in a great part due to the defendant's admissions together with stipulated facts. And the stipulated facts were concerning the lab results. When the plea was rejected and withdrawn, there was a pending motion to suppress statements. And here, although it was mentioned in the police reports, defense counsel did not receive a copy of the defendant's Miranda waiver until February 16, 2017. That led counsel to withdraw his motion to suppress. Additionally, the state was providing further photos. On March 16, 2017, the defense requested but state would not agree to further 402 conference. On June 14, 2017, the lab reports came back and the indictment was corrected to correct the controlled substance, which were the mushrooms. On June 14, the defendant waived jury and the bench trial actually commenced on August 7. So it was at least a year after the plea was withdrawn that the trial occurred. Defense argues that by all prevailing professional standards, defense counsel's advice to not accept the plea was patently unreasonable and lacked legal merit because it was contrary to case law interpreting the armed violence statute. And that why a court may be reluctant to second guess the legal opinion of trial counsel. In this case, counsel was so far outside the bounds of professionalism as to be objectively unreasonable. However, in this case, exactly this question was raised in defendant's motion for new trial, and that was by new counsel Dixon, not trial counsel Cola. That motion was denied by the trial court, and that denial should not be reversed absent of use of the court's discretion. In my brief, I cite this at pages 4 and 5, and in the transcripts, it is at pages 253 and 254 in the record. Paraphrasing the court's holding, in the case law that everyone cites, there's issues involved, and I can see why they did it. And the court concluded they were defending the armed violence, and I find Mr. Cola adequately represented his client, and I will deny the motion for new trial based on ineffective assistance of counsel. Here, the defendant argues that the two lines of cases regarding whether the defendant was sleeping and then also regarding immediate access to the guns, that trial counsel was arguing merely being armed while possessing drugs alone in a home does not create the potential for violence and is not the kind of conduct the statute was enacted to deter. That's from Condon that I cite in my brief at page 10, but that's also based on Condon, which held it reaches too far to impose armed violence liability whenever someone has both guns and drugs at home. Defendant criticizes in the reply brief that Callaway was decided after this case, but legal theories aren't copyrighted or patented, so defense counsels can argue legal theories either before, contemporaneous with, or after other counsel in different venues. Indeed, one reason the Illinois Supreme Court takes appeals are to resolve conflicts between the districts when the decisions are coming up with different results. Also, courts give limited rulings saying under these particular circumstances, we hold that the conduct either complies with or doesn't comply with a rule of law, and law evolves. An example is the buffer decision. Those cases address what the appropriate sentencing is for juvenile defendants. It started with no death penalty for juveniles, then whether juveniles were subject to mandatory life, then it developed the millie factors, then it considered whether juveniles were subject to de facto life, and then held that de facto life was a 40-year sentence. Here, defense counsel argues that these circumstances do not fit the purpose of the armed violence statute, and it is the mere presence of guns and drugs. I won't refer to specific sites in the record here, but they are available in the defense brief at pages 2-5 and my brief at pages mostly 14-15. Many of the facts are taken from defendant's admissions, which would have been subject to the motion to suppress, which was pending when the plea was rejected and then withdrawn. The defendant is young. He was living in the basement of his parents' home. He said that every two to three weeks he bought one ounce of cannabis for $350 and sold it as $20 a gram in order to help his parents pay the bills. He didn't even have a scale to measure the cannabis but simply eyeballed it. He kept the mushrooms for his personal consumption and some marijuana in a red Nike shoebox on the ledge and some in a plastic container in his dresser. The marijuana in a mason jar under the bed he was just holding for a friend. Some of the photos are available. It's People's Exhibits 25, 33, 37, and 39. This is not a big-scale professional or a gangbanger funding his gang and selling cocaine from a house two doors down from the middle school to students before and after class and during recess. The court found here that the defendant was sleeping, and the defendant admits in the reply brief, page 5, that there is conflicting testimony on whether the defendant's head was to the left near the door or the right further away. And you can see that in States Exhibit 13, the photo. And then the gun was in the corner behind the door, and that is in Exhibit 27 photo. The defendant had no history of violence. There's absolutely no violence involved in this offense and arrest. The defendant had a FOIA card. He was a legitimate gun owner. Defense counsel was not unreasonable in arguing that in this case, with the defendant sleeping and the position of the gun, they were just someone who had both a gun and a drug in the house. As I noted previously in the record at pages 253 to 254, the trial court, who is the fact finder, stated in his ruling denying the motion for new trial, paraphrasing, in the case law that everyone cites, there's issues involved, and I can see why they did it. And then he concluded they are defending the armed violence, and I find that defense counsel adequately represented his client. The trial court then denied the motion for new trial based on ineffective assistance of counsel, and that ruling was not an abuse of discretion. The state asked the defendant's conviction and sentence be affirmed. Do your honors have any questions for me? The problem I have is that even if Calaway and Loggins had been decided and considered by Mr. Cola in advising the defendant, I don't see how they would have caused Mr. The point, if I may finish, in those cases, the defendant was situated in a far different way as it related to the gun than in our case. Even if even with Calaway and Loggins, wouldn't the advice that Mr. Cola gave be somewhat ridiculous? In this case, I'll let you answer that, and I'll have a follow-up question. Okay. I think in this case, someone commented whether the trial judge was or whether it's reasonable. And here, what you have to look at, I think, or the most important part, aside from the Condon holding about- I apologize. I meant Calaway, not Condon. Okay. Well, Calaway cites to Condon. So Condon was operating, and that's the one that says-I'm sorry. I'm sorry. I quoted it earlier. Okay. Condon held, it reaches too far to impose armed violence liability whenever someone has both guns and drugs at the home. And the important part here is that the trial court, who had, again, I agree with counsel, that much of the case law was cited in the motion for a directed verdict. But the trial court, who also was the fact finder and heard all the facts, said that the cases that the parties are citing, issues are involved, and I can see why they did it. I don't see-and then concludes, they were defending the armed violence, and I find Mr. Cola adequately resented his representative client, and I will deny the motion for new trial based on ineffective assistance of counsel. So given that, I don't see how this court could find that counsel was blatantly wrong because the trial court here considered this exact question, and he found he didn't agree because he convicted the defendant, but he agreed that counsel's argument was reasonable. But in Callaway, in Loggins, the point of those cases, the only hope a defendant has is where the defendant is running away or moving away from the gun. Here, it's very clear, and thus the defendants could not use the gun against the officers. Here, there's no question. The officers are at the door of the bedroom. The gun is in arm's reach of the defendant. The defendant's not running away or moving away from the gun. I'm at a loss to understand what argument Mr. Cola could actually make, even a good faith extension of the argument, as the case law existed at the time he rejected the plea. I do have a follow-up question, and it is this. I know discovery was not complete, but I presume as it relates to discovery, it was clear with what had been tendered at the time the plea was rejected where the defendant was in relation to the gun in the bedroom. Would that be fair? I have a little bit of a dispute. I mentioned that some of the photos had not been received by defense counsel, so I'm not sure exactly from my notes what photos were outstanding, and I recommend if you look at photo, I think it's 13, it shows the defendant's room with the door butted up against the bed, and then the gun is actually behind the door in the corner. So if the defendant's head is to the right, then his access to the gun is blocked by the door, and the counsel used that combined with his being asleep to emphasize, you know, that he didn't in fact have immediate access. But there are cases where the gun is under the cushion and that's access, and there's a case where the defendant is asleep and it's access, right, at the time the plea was rejected. Yes, there are cases that say that. But there's also, as I said, Condon which says that merely having a gun present and drugs, you know, isn't what is the focus or what the armed violence statute was enacted for. And in this case, the defendant had a valid FOID card, so he was a legitimate gun owner. All right. I did not have any additional questions. Thank you. Yes, thank you. Ms. Campbell, both of you have, both counsel have cited to a FOID card. Is there anything, why is a FOID card relevant here? Just because he's a legal gun owner does not necessarily allow him to have a loaded weapon in the presence of illegal drugs, does it? Well, the defendant has, you know, with the FOID, a constitutional right to have a gun in his home. And there's no indication, you know, in this case, or any nuances that indicate he actually has possession of the gun in order to defend his drug supply. As I mentioned, you know, he's not a big-time cocaine dealer. He's not a gangbanger. You know, he doesn't need to defend his supply. I don't believe there's any evidence that he actually did any drug dealing, you know, at his own home. So this is truly just a case of him exercising his right to have a gun in his home, and he also keeps his supply of, minimal supply of marijuana there. Well, that being the case, and certainly police have discretion, how is he then charged, but more importantly found guilty of this offense? Well, simply because a defense was not ultimately successful doesn't mean that a trial counsel was ineffective for pursuing it. And simply because a strategic choice, you know, proved to be unsuccessful doesn't mean that it was the wrong choice. And in this case, you know, again, I refer to the trial court's comments that, you know, he's heard the evidence, he's listened to the parties argue the case law, and he saw that there were issues involved and that he understood why the defense counsel did that. So I think it would be very hard to argue that he was so, you know, patently wrong or totally unreasonable because then the trial judge has to be unreasonable too because he, you know, found that the defense counsel was not ineffective. Well, the fact that trial counsel is wrong is something we consider, and we often make that decision. So that should not really be a concern for us, should it? We should follow the law, the standard of review. Well, there are a couple standards of review at play here. And I think, you know, in this case, since it was covered in the post-trial motion, that should only be reversed if you find the trial court abused his discretion. And I don't think that's present here. And then, you know, obviously, you know, the trial court is kind of split in this because he does find the evidence sufficient to convict the defendant, but he understands, you know, the reasoning and the case law and the logic behind the argument. So I think both of those things need to be taken in consideration here. All right. If we were to agree with the defense or appellant in this case, do you feel that the Lafler case gives us any authority or do you have any position on what the Lafler case allows us to do? Yes, I cite that at page 19 in my brief. And one of the things that Lafler notes is that in the time continuum, it is difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer. So in this case, I argue that, you know, the plea offer was rejected and then withdrawn by the state over a year before the trial. You can't go back to that point. You know, there was continuing discovery, you know, the potential for the motion to suppress statements, you know, was withdrawn after they got the Miranda waiver. They get the lab results back from the testing of the substances and come to the stipulation on the facts for both the weight of the substance and the chain of custody. There were some other things that I can't remember. But the positions of the party, you know, along the process of the trial will, as they gain more knowledge and more discovery, will change as to the viability or the appeal or likelihood of either accepting a plea or offering one. Here, that boat is well sailed at the time of the trial. You know, as I said, it's been over a year. You can't go back. There were a number of outstanding discovery issues at the time the state chose not to accept the plea. And at the time he rejected the plea, they didn't know that the state would then say, you know, we're withdrawing the offer and there will be no other. Because defense counsel, as I noted, did subsequently ask for another 402. The state simply chose at that time not to agree to that. All right. Thank you, Ms. Campbell and Justice Burkett. I have no other questions. Thank you, Justice Hutchinson. Ms. Campbell, would you agree the only issue here is whether or not counsel's advice was erroneous? No. Well, no. Because, again, I go back to the status of the plea. And I think you really need to take that into consideration, you know, particularly at that time the year before. I think you should also look to the trial court's credibility determinations in the hearing on the motion for new trial. And defense counsel disagrees with me a little on the exact wordage for that. The trial court found Mr. Kola to be credible. And then I say that the natural inference from that is that he found defendant not to be credible. In part, and this is at page, I believe, 253, the trial court goes through a number of issues on which the trial, Mr. Kola testified and the defendant testified, and he is always finding that is, in fact, Kola's statements that were credible. We have another case on the call. I'm going to ask you this. Mr. Kola testified that the state could not meet their burden. That's what he told the defendant, that the state could not meet their burden. That he thought the defendant had a very good case. And I am quoting him, that he was innocent. He told the defendant he thought he was innocent. No, I'm arguing. You get it? Is it? I'm sorry. He told him that, correct? That's what the trial court found. He found Mr. Kola credible and Mr. Kola actually told him. Well, I would say that the trial court also found disagreed with the defendant's claim that he told the defendant he would never step foot in jail and disagreed that he had guaranteed that the defendant would win. He said, I would never do that. He said he gave the defendant his advice. That is advice that the trial court subsequently found not to be unreasonable. And that it was the defendant's own decision. Even the defendant agreed that it was indeed his own decision to reject the plea. So. Let me ask you this. Would you agree that an attorney who's representing a person on a class X felony with a mandatory minimum of 10 years has an obligation to examine the case law on the issue of whether or not the defendant has a legitimate or viable defense? Would you agree that you have to look at the leading cases? Yes, he does. And he said that he did. And he also looked at the police reports. And again. I'm going to ask another question. The Illinois Supreme court's decision in Condon. And by the way, I was a trial prosecutor in Condon. That was resolved because the firearms were in different rooms than where the defendants were located. They were in the firearms were in other rooms. The defendants were not even in the rooms where the firearms are located. People versus hair, which is subsequent to condom and sites. Condon is a 1993 case where the court verified again and upheld the conviction of our violence where the defendant was outside a vehicle at the time of the arrest. The situation was that the police were executing a warrant on a farmhouse in the rural area. And the defendant was outside of the vehicle with a partially open window and the guns were inside the front passenger compartment. And that was armed violence. How is that case distinguishable from the facts of this case? Well, in the hair case, and I actually worked on that appeal when I was down in, I believe it's the fifth district. In that case, I believe it was noted that the defendant could have reached through the window and gotten access to the gun. So again, I think it is defense counsel's argument here. It's the combination of the two factors defendant being asleep so that he wouldn't be able to act and that the, the gun was behind the door. If his head is away from it, then the door is blocking his access. Even if, you know, it's two to three feet from the other end of the bed. So again, I think in this case he is, you know, going on the theory that it is just the presence of the, the guns, you know, and the drugs. And I don't recall from any of the other cases, the note that the defendant had a point card. So this, I think reinforces the legitimacy of his having a firearm in the first place. Let me ask you this. Finally, the would you agree that when we're examining whether or not trial counsel's performance is deficient, that we don't look at isolated aspects of the representation, but we've taken the consideration, the entirety of council's conduct. Would you agree? Indeed. And here. Council filed a motion stating that the defendant had not been given Miranda rights. When in fact the police report showed that he was given Miranda rights and the police report stated that he assigned him a waiver. Correct. Yes, but the defense council didn't, despite that being mentioned in the police report, the state didn't turn over that Miranda right waiver form until well after. So if that had somehow gone missing, that could blow a big hole in the state's case. And the defendant's admissions were, you know, a large part of the evidence, you know, even according to the defendant. And so if the defense council had been able to keep out those admissions, it would have greatly strengthened, you know, his bargaining power. Well, that motion that he filed was a cut and paste. Would you agree? It's a cut and paste emotion. I'm sorry. You're breaking up a little. Could you repeat that please? Motion that was filed. The original motion was a, a motion to quash. I believe. Yes. I think. In 2013. Did you notice that? I. Do not recall that. How about the fact that. Although the defense was a technical defense. On the issue of whether or not the defendant was armed under the case law. Counsel waive opening statement. In a case where his client was facing 10 years in prison. It's a minimum. I think in this case, He was waiting to see what. Evidence the state was going to go and how it was going to come out. I don't think. You know, particularly in a situation of a bench trial where, you know, they've had the run up for the past, you know, over a year that it is ineffective assistance. I don't think it was a legal defense. The state made a very compelling opening statement. It is very clear that the shotgun. Shotgun. Right next to the front. On cross-examination. Mr. Cole established that the gun was about two and a half feet away. And then he waves opening statement. He stipulates a way. The evidence regarding whether or not the, there was cannabis or controlled substance, but the mushrooms. He steps to the lab reports. He doesn't challenge the state's evidence on that. And Mr. Cole had testified. That. He told his client. He was innocent. Of these charges of the charge of armed violence. He told him. He had a really good case and he was innocent. How is that distinguishable? From the advice that was given in math versus Cooper. By defense counsel. And he said, they can't prove intent of murder because you shot him below the waist. I think that's because in that case. The state. I believe the state. Seated air in that. And then I think one of the. Later questions or comments is that, you know, they don't know whether. He thought. He thought. He thought. Improperly that that prohibited. Or he just thought that was a good argument to persuade a jury. And I think that's what happened in this case. Defense counsel. Says his. Argument for the motion on directed verdict. And then he is aiming. What he thinks is a. Persuasive argument to the trial judge. And obviously, you know, that. Did have some merit because the trial judge indicated sympathy. But yet he didn't find it. Overwhelming enough. To not find the defendant guilty. So I think in this case. You know, again, he was not unreasonable for to pursue that. This game will finally. If we were to agree with the defense. When we. Vacate the conviction. Our violence. The other convictions. The underlying convictions. The case with directions for the state to reoffer. I don't agree with that. And again, I refer you to Loffler. Where it says that, you know, you can't put. Basically, you can't put the genie back in the bottle. It's very hard to get both the state and the defense. Back to the position. They were at. When the. He was originally rejected. So. Well, here we know what the exact positions were. Don't we. Based on the testimony. No, because again, you have the outstanding. Motion to suppress the defendant's statement. He hasn't gotten all the photos. The lab reports are, in fact, not back yet. So I think there's, you know, a wealth of information. That could have given him, you know, increased or decreased. Bargaining power. And, you know, unfortunately for the defendant. As the evidence, you know, becomes more clear to both sides. The defendant's position is not as good as it was at that time. We just simply vacate the nonviolence conviction. I would, of course, not agree with that. But, again, you know, I refer to trial counsel's comments that, you know, he heard the conflicting case law. He saw why they did it. And he didn't find defense counsel to be ineffective. And he was the one that was the trier of fact and heard all the actual evidence. So, again, I ask you to give the trial court the deference that his decision was due and not find that that was an abuse of discretion and confirm the defendant's conviction. I'm sorry, I had a little bit of trouble hearing you. Can you say that again? The trial court was not given Lafleur v. Cooper or Missouri v. Frye, correct? I do not recall. I would have to go back. I know they did have Condon, I think. They had Condon, but in terms of ineffective assistance and attrition performance, the trial court was not given the benefit of Missouri v. Frye or Lafleur v. Cooper, correct? I can't recall from the record. I will defer to your honors. Thank you, Ms. Danny. Oh, I apologize. I was on mute. Okay. The wrong in this case can be righted. And the way to do that is to restore the parties as best as possible. Yes, it's hard to put that genie back in the bottle, but if you take a look at the colloquy in the record surrounding the withdrawal of the plea agreement, the state withdrew it because it wasn't accepted by the defense. That's in the record on pages 21 and 22. There's no indication that the state just willy-nilly withdrew it. They withdrew it because the defense didn't accept it. And to right this, to go back to that period of time, is to go back to the time when the advice needed to have been appropriate and while that plea offer was on the table. I would also point out that the state acknowledges, you know, Mr. Arredondo is not a professional criminal. And, frankly, this is a heartbreaking case that he's selling marijuana to pay his bills. His parents' bills. It's sympathetic. The problem is that that's not relevant to the armed violence. The armed violence is an application of the facts of the law. And as absolutely sympathetic as this case is, counsel needed to have given him the advice based on the law, not advice based on the sympathetic nature of this case. Additionally, whether or not he had a FOID card has nothing to do with this. It's not relevant. It's not a part of the statute. It's not an excuse for having that gun there. As your honor pointed out in Condon, it was in a different room in the house. Calloway, which was decided after this case went to trial, even said, there's no reason a defendant couldn't make a spontaneous decision to lunge for and use a weapon just beyond arm's reach. And, you know, even that, I think, completely negates the whatever question there was about which way his head was facing, because the way that the bed was positioned in the room, he could have easily reached that gun. And so none of these more recent cases evolve the state of the law. And even if they did, they weren't there for counsel to base his advice on or for the trial court to consider in ruling on whether he was guilty of armed violence or not. Finally, the issue that some of this discovery wasn't complete, the issue that, you know, he had to withdraw the motion to suppress, none of that was the basis that trial counsel gave for the advice that he gave his client. He didn't say, oh, I advised him because I thought that, you know, we were going to win on this motion to suppress. No, he said, I looked at the police reports. I looked at the case law. That was the basis. That was the advice that he was giving his client, that I don't think the state can meet its burden. And further to that end, in Loeffler, the advice was wrong regarding one element of the charge. He said, I don't think that the state can prove intent because of the way that he was shot below the waist. This case is even more egregious than that because he's advising him, I don't think the state can meet its burden, not just this one part of the case, not just the issue of intent, but that the state can't meet its burden. And so I would, I guess I would leave it at that in terms of asking this court to make an attempt to put the defendant back in that position so that he can have competent advice and counsel given to him, you know, as best as possible that, you know, so to speak, as the state put it, the genie can be put back in the bottle to some extent. And, you know, and the wrong that was done in this case can be righted at this point as best as possible. Thank you. Thank you. The court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court stands in recess till the next case is called. We'll stand in recess. I will initiate the call. Thank you. Thank you. Thank you. Thank you.